UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TRUSTEES OF THE PLUMBERS AND )
PIPEFITTERS NATIONAL PENSION FUND, )
*et al.*, )
   Plaintiffs, )
)
v. ) Case No. 1:13-cv-01107 (GBL/IDD)
)
LOU CARBONE PLUMBING COMPANY, )
)
   Defendant. )
)

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Trustees of the Plumbers and Pipefitters National Pension Fund's ("NPF") and the Trustees of the International Training Fund's ("ITF") (collectively referred to as "Plaintiffs") Motion for Default Judgment against Lou Carbone Plumbing Company ("Defendant") pursuant to Federal Rule of Civil Procedure 55 (b)(2). (Dkt. No. 9.) After a licensed attorney for Defendant failed to appear at the hearing on December 6, 2013, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiffs' Motion for Default Judgment, and the supporting affidavits, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against Defendant.

**I. INTRODUCTION**

On September 4, 2013, Plaintiffs filed this action under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145, and under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

1

§ 185(a). (Mot. Default J. ¶ 1.) These acts allow parties to enforce provisions of their collective bargaining agreements. In filing their Complaint, Plaintiffs seek unpaid contributions, interest on the unpaid contributions, liquidated damages, injunctive relief,[1] and attorneys' fees and costs, pursuant to ERISA, LMRA, the Collective Bargaining Agreement, and the Restated Agreement and Declaration of Trust executed by the United Association Local Union No. 396 ("Local Union") and Defendant. (Compl. ¶¶ A – D, Mem. Supp. Def. J. at 3.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 185(a), 1132 and 1145 because the funds are administered from the Plaintiffs' principal place of business in Alexandria, Virginia. (Compl. ¶¶ 1, 2, 4.) Where an action is brought in a district court of the United States under Sections 502 and 515 of ERISA, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Moreover, "a suit for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, may be brought in any district court having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

This Court has personal jurisdiction over Defendant under the decision in *Board of Trustees, Sheet Metal Workers Nat'l Pens. Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997).[2] Additionally, this Court has personal jurisdiction over Defendant pursuant to Section 502 of ERISA, 29 U.S.C. §§ 1132(e)(2), and Section 301(c) of the LMRA, 29 U.S.C.

---

[1] In Count III of the Complaint, Plaintiffs seek an order enjoining the violations of the terms of the employee benefit plans and requiring Defendant to submit timely contributions and reports to Plaintiff Funds. Plaintiffs have not pursued their request for injunctive relief in their Motion for Default Judgment.

[2] The Court held that the Eastern District of Virginia had personal jurisdiction over defendant, a New York corporation, because ERISA provided for nationwide service of process, and thus, the Fifth Amendment "national" contacts theory is applicable, and the Virginia long-arm statute under Virginia Code § 8.01-328.1 is inapplicable.

§ 185(a). (Compl. ¶ 4.) Venue is also properly situated in this District because the breach of the collective bargaining agreement and consequential breach of Section 515 of ERISA, 29 U.S.C. § 1145, occurred within this judicial district. (Compl. ¶¶ 1, 2.)

### B. Service of Process

Under 29 U.S.C. § 1132(e)(2), service of process is proper in any district where a defendant resides or may be found. When a plaintiff fails to serve the defendant properly under federal or state law, a court lacks personal jurisdiction over the defendant and may not enter default judgment against him *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Fed. R. Civ. P. 4(k), (stating that "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served" (quoting *Mississippi Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946))); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249 (4th Cir. 1974) (reversing lower court's decision to enter default judgment against a non-resident defendant union because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the union with summons and complaint).

Although § 1132(e) states where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effectuated "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h). Individuals are properly served under Rule 4(e)(2) by delivering to the person a copy of the summons and the complaint. *Id.* at 4(e)(2).

3

On September 12, 2013, a private process server served Evelyn C. Carbone, authorized registered agent of Defendant company, with a copy of the Summons and Complaint. (Dkt. No. 4.) Therefore, Plaintiffs properly served Defendant pursuant to 29 U.S.C. § 1132(e)(2) and FRCP 4(h).

### C. Grounds for Default

Plaintiffs filed their Complaint on September 4, 2013. (Dkt. No. 1.) Defendant has failed to appear, answer, or file any other responsive pleadings in this matter. On October 25, 2013, Plaintiffs filed a Request for Entry of Default with the Clerk. (Dkt. No. 7.) On October 29, 2013, the Clerk entered default against Defendant. (Dkt. No. 8.) On November 18, 2013, Plaintiffs filed a Motion for Default Judgment and the Court conducted a hearing on the matter on December 6, 2013. (Dkt. Nos. 9, 12.) After Defendant failed to appear at the December 6, 2013 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FACTUAL FINDINGS

The undersigned Magistrate Judge makes the following findings of fact based on the Complaint; the Motion for Default Judgment and memorandum in support thereof; the Affidavits by William T. Sweeney Jr., the Administrator of the NPF ("Sweeney NPF Aff."), who is also authorized to execute an affidavit on behalf of the International Training Fund ("Sweeney ITF Aff."); the Declaration of John R. Harney, Plaintiffs' counsel ("Harney Decl."); and the documents submitted in proof of damages.

Plaintiffs are the trustees of multiemployer employee benefit plans[3] administered from offices located in Alexandria, Virginia. (Compl. ¶¶ 1, 2.) Both the NPF and the ITF are

---

[3] Such plans are defined by ERISA, 29 U.S.C. §§ 1002(3) and 1002(37).

4

established and maintained by a Restated Agreement and Declaration of Trust and by a Collective Bargaining Agreement executed by the Local Union No. 396 and Defendant. (Compl. ¶¶ 1, 2.) Defendant is an Ohio corporation organized under the laws of the State of Ohio, transacting business as a contractor or subcontractor in the plumbing and pipefitting industry. (Compl. ¶ 3.) Defendant is an "employer in an industry affecting commerce," as defined by 29 U.S.C. §§ 1002(5), (9), (11), (12), and (14); 29 U.S.C. §§ 142(1), (3), and 152(2); and 29 U.S.C. § 1001(a). (Compl. ¶ 3.) Plaintiffs allege, and by failing to answer Defendant admits,[4] that Defendant employed certain employees under the Collective Bargaining Agreement during the period alleged by Plaintiffs. (Compl. ¶ 8; Sweeney ITF Aff. ¶ 4; Sweeney NPF Aff. ¶ 4.)

Defendant is a signatory to the Collective Bargaining Agreement with Local Union No. 396 establishing the terms and conditions of employment for journeymen and apprentice plumbers and pipefitters employed by Defendant. (Compl. ¶ 5.) Pursuant to the Collective Bargaining Agreement, Defendant agreed to pay certain sums of money for each hour worked by employees of Defendant covered by the Collective Bargaining Agreement. (Compl. ¶¶ 6-7.) Plaintiffs claim that Defendant employed certain employees covered under the Collective Bargaining Agreement and failed to make proper contributions to the NPF (Count I), and the ITF (Count II) for work performed at Defendant's request. (Compl. ¶¶ 8-10, 20-21.)

### A. Count I – National Pension Fund

Defendant failed to make contributions due to the NPF for the months of July 2009 through November 2010, pursuant to audit reports submitted by Defendant for that time period. (Compl. ¶¶ 9, 10; Sweeney NPF Aff. ¶¶ 5, 6.) Based on these audit reports, Defendant owes

---

[4] Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.").

contributions to the NPF in the amount of $4,081.73 for the months of July 2009 through November 2010. (Compl. ¶ 10; Sweeney NPF Aff. ¶ 6.)

Defendant has also failed to make contributions due to the NPF for the period of June 2013, but has failed to submit reports to the NPF indicating the amounts owed for the month of June 2013. (Compl. ¶ 11; Sweeney NPF Aff. ¶ 7.) Under Article VI, Section 6, of the Restated Agreement and Declaration of Trust, when an employer fails to file reports indicating the amounts owed, the NPF is authorized to project the delinquent amount using the provided formula.[5] Pursuant to this provision's formula and the report forms submitted for the three months for which Defendant actually submitted reports, the projected delinquency for June 2013 is $869.57. (Sweeney NPF Aff. ¶ 11.) Therefore, the total amount Defendant owes to the NPF for the months of July 2009 through November 2010 and for the month of June 2013 is $4,951.30. (Compl. ¶ 16.)[6]

The NPF further alleges that Defendant is bound to make payments under Article VI, Section 5, of the Restated Agreement and Declaration of Trust, which provides that an employer who fails to timely pay the amounts required by the Collective Bargaining Agreement shall be considered delinquent and may be assessed liquidated damages in the amount of ten percent

---

[5] "The Trustees...may project as the amount of the delinquency (a) the average of the monthly payments actually made by the Employer for the last three (3) months for which the payments were made, or (b) the average of monthly payments made by the Employers for the last twelve (12) months for which payments were made, or (c) the average of the monthly payment documented by the remittance reports submitted by the Employer without payments for the last three (3) months, or (d) the average of the monthly payment documented by remittance reports submitted by the Employer without payments for the last twelve (12) months, or (e) the average monthly contributions determined by (i) certified payroll records required under any applicable federal, state or local law or (ii) an audit of the payroll and wage records of the Employer...." (Sweeney NPF Aff. ¶ 9) (citing Article VI, Section 6, of the Restated Agreement and Declaration of Trust.)

[6] Paragraph 16 of the Complaint states that "Defendant owes to the [NPF] contributions for the months of July 2009 through November 2010 pursuant to an audit, May 2013 and June 2013 in the total amount of $4,951.30." (Compl. ¶ 16.) The inclusion of the month of May 2013 is clearly only a typographical error because Plaintiffs show that the total amount of $4,951.30 owed by Defendant is for the months of July 2009 through November 2010 and June 2013. Moreover, Plaintiffs do not mention May 2013 anywhere else in its Complaint, Motion for Default Judgment, or supporting documents.

6

(10%) of the amount due. (Compl. ¶ 17.) Pursuant to this provision, the NPF claims that it is owed liquidated damages in the amount of $495.13 for the months of July 2009 through November 2010 and June 2013. (Compl. ¶ 18; Sweeney NPF Aff. ¶ 14.)

In addition, the Restated Agreement and Declaration of Trust allows interest on any amounts owed to the NPF accruing at the rate of twelve percent (12%) per annum from the due date through the date of payment. (Sweeney NPF Aff. ¶ 14.) The NPF alleges that Defendant owes interest on the delinquent contributions in the amount of $1,783.99, calculated at the rate of 12% per annum from the date due through December 6, 2013, and continuing to accrue until the date of full payment. (Sweeney NPF Aff. ¶ 14.)

Therefore, Defendant owes the NPF a total of $7,230.42 in the following amounts: $4,951.30 in contributions for the months of July 2009 through November 2010 and June 2013; $495.13 in liquidated damages for the same period; and $1,783.99 in interest accruing from the date due through December 6, 2013, and continuing to accrue until the date of full payment. (*See* Sweeney NPF Aff. ¶ 15; Sweeney NPF Aff. App.)

### B. Count II – International Training Fund

Defendant failed to make contributions due to the ITF for the period of August 2009 through November 2010, pursuant to audit reports submitted by Defendant for that time period. (Compl. ¶ 20; Sweeney ITF Aff. ¶¶ 5, 6.) Based on these audit reports, Defendant owes contributions to the ITF in the amount of $564.88 for the months of August 2009 through November 2010.[7] (Compl. ¶ 21; Sweeney NPF Aff. ¶ 6.) Defendant has also failed to make contributions due to the ITF for the period of June 2013, but has failed to submit reports to the

---

[7] Paragraph 21 of the Complaint states that the contributions amount owed for the months of August 2009 through November 2010 pursuant to the audit reports in $554.88. Based upon the undersigned's calculations and review of the rest of the Complaint, supporting affidavit, and the appendix, it is clear that this number is merely a typographical error. The correct contributions amount owed for the months of August 2009 through November 2010 pursuant to the audit reports is $564.88.

7

ITF indicating the amounts owed for the month of June 2013.[8] (Sweeney NPF Aff. ¶ 7.) Under Article VI, Section 7, of the Restated Trust Agreement, when an employer fails to file reports indicating the amounts owed, the ITF is authorized to project the delinquent amount using the provided formula.[9] Pursuant to this provision and the report forms submitted for the three months for which Defendant actually submitted reports, the projected delinquency for June 2013 is $91.54. (Sweeney ITF Aff. ¶ 11.) Therefore, the total amount owed to the ITF by Defendant for the months of August 2009 through November 2010 and for the month of June 2013 is $656.42. (Compl. ¶ 27.)

The ITF also contends that pursuant to Article VI, Section 6, of the Restated Trust Agreement, if an employer fails to file a report or make contributions within ten (10) calendar days of the due date, the Trustees have the discretion to obtain liquidated damages in the amount of twenty percent (20%) of the amount due for each overdue monthly payment. (Compl. ¶ 28.) Pursuant to this provision, the Complaint alleges that Defendant owes the ITF $131.28 in liquidated damages for the period of August 2009 through November 2010 and June 2013. (Compl. ¶ 29.)

In addition, Article VI, Section 6 of the Restated Trust Agreement authorizes interest to accrue at a rate of twelve percent (12%) per annum from the due date to the date of payment. (Sweeney ITF Aff. ¶ 15.) The ITF asserts that Defendant owes interest on the delinquent

---

[8] The Complaint states that the time period for which contributions are owed is August 2009 through November 2010 and June 2013, whereas the Memorandum in Support of Motion for Default Judgment and Sweeney ITF Aff. suggest that the time period is July 2009 through November 2010 and June 2013. Upon examination of the appendix, the undersigned determined that the amounts owed are unaffected by this discrepancy because in July 2009 the audit report indicated that the contributions amount owed was zero dollars. Therefore, the undersigned will rely on the Complaint's time period of August 2009 through November 2010 and June 2013 for clarity.

[9] "The Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments or reports actually submitted by the Employer for the last three (3) months for which the payments or reports were submitted or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted or (c) the average monthly contributions determined by an audit of the payroll and wage records...." (Sweeney ITF Aff. ¶ 19) (citing Article VI, Section 7, of the Restated Trust Agreement.)

contributions in the total amount of $243.92 from the date due through payment or December 6, 2013, and continuing to accrue at the same rate until the date of full payment. (*Id.*)

Consequently, Defendant owes the ITF a total of $1,031.62 in the following amounts: $656.42 in delinquent contributions for the months of August 2009 through November 2010 and June 2013; $131.28 in liquidated damages for the same period; and $243.92 in interest until December 6, 2013, and continuing to accrue at the same rate until the date of full payment. (Sweeney ITF Aff. ¶ 16; Sweeney ITF Aff. App.)

Pursuant to the Agreements and under Section 502(g)(2) of ERISA, Plaintiffs are entitled to recover: (1) the full amount of unpaid contributions; (2) interest on contributions which were paid late or remain unpaid; (3) liquidated damages for contributions which were paid late or remain unpaid; and (4) reasonable attorneys' fees and the costs of this action. The amounts due in unpaid and delinquent monthly contributions, liquidated damages on unpaid and delinquent contributions, and accrued interest on unpaid and delinquent contributions calculated through December 6, 2013, are summarized as follows:

| *Plaintiff* | *Delinquent Contributions* | *Liquidated Damages* | *Interest through 12/6/13* | *Total* |
|---|---|---|---|---|
| National Pension Fund | $4,951.30 | $495.13 | $1,783.99 | $7,230.42 |
| International Training Fund | $656.42 | $131.28 | $243.92 | $1,031.62 |

(Mem. Supp. Def. J. at 2; Sweeney NPF Aff. Appx.; Sweeney ITF Aff. Appx.)

### C. Attorneys' Fees and Costs

Finally, Plaintiffs seek $2,058.79 in attorneys' fees and costs ($1,437.50 in attorneys' fees and $621.29 in costs). (Mem. Supp. Def. J. at 3.) In support of this request, Plaintiffs submitted the Declaration of John R. Harney and a report of attorneys' fees and costs through

November 18, 2013. (Harney Decl. ¶ 7; Harney Decl. Appx.) The undersigned Magistrate Judge finds the following costs and attorneys' fees to be reasonable.

| Attorneys' Fees | Costs |
|---|---|
| $1,437.50 | $621.29 |

(Harney Decl. ¶ 7.)

### III. RECOMMENDATION

The undersigned Magistrate Judge recommends entry of default judgment in favor of the Trustees of the Plumbers and Pipefitters National Pension Fund and the International Training Fund and against Lou Carbone Plumbing Company.

The National Pension Fund is entitled to recover damages in the following amounts: $4,951.30 in contributions for the months of July 2009 through November 2010 and June 2013; $495.13 in liquidated damages for the same period; and $1,783.99 in interest accruing from the date due through the date of payment or December 6, 2013, and continuing to accrue until the date of full payment. Thus, the recommended total damages award for the National Pension Fund is $7,230.42.

The International Training Fund is entitled to recover damages in the following amounts: $656.42 in delinquent contributions for the months of August 2009 through November 2010 and June 2013; $131.28 in liquidated damages for the late payments for the same period; and $243.92 in interest until December 6, 2013, and continuing to accrue until the date of full payment. Thus, the recommended total damages awards for the International Training Fund is $1,031.62.

Plaintiffs are also entitled to recover their attorneys' fees and costs in the amount of $2,058.79 in attorneys' fees and costs ($1,437.50 in attorneys' fees and $621.29 in costs). If

10

further action is required to enforce and collect this judgment, Plaintiffs may apply to this Court or to the court in which enforcement is sought for further appropriate injunctive relief in addition to the relief set out in this Report and Recommendation.

## IV.  NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to the Registered Agent of Defendant at the following address:

Evelyn C. Carbone, Registered Agent
Lou Carbone Plumbing Company
922 Cynthia Avenue
Niles, OH 44446

/s/
Ivan D. Davis
United States Magistrate Judge

April 1, 2014
Alexandria, Virginia